NOT RECOMMENDED FOR PUBLICATION
File Name: 26a0209n.06

Case No. 25-5174

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED
May 11, 2026
KELLY L. STEPHENS, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE EASTERN DISTRICT OF |
| SEAN CHRISTOPHER WILLIAMS, | ) | TENNESSEE |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | OPINION |
| | ) | |

Before:  READLER, DAVIS, and BLOOMEKATZ, Circuit Judges.

READLER, Circuit Judge.  Sean Christopher Williams was convicted on three counts of manufacturing child pornography and sentenced to 1,080 months in prison.  On appeal, he contests the district court's admission of purportedly prejudicial evidence, the sufficiency of the evidence used to convict him, and the length of his within-Guidelines sentence.  Seeing no error on any of these fronts, we affirm.

I.

Around 2 a.m., a campus police officer in North Carolina came upon a man passed out in the driver's seat of an idling vehicle.  Shining his flashlight into the vehicle, the officer spotted drugs and drug paraphernalia.  The officer awakened the sleeping man and ultimately arrested him.  Despite the man's refusal to disclose his identity, officers found a driver's license bearing the name Sean Williams.  Williams, it turns out, had an active warrant for his arrest on a federal gun charge.

(His eventual conviction in that case is the subject of a separate appeal. *United States v. Williams*, No. 25-5175.)

After the arrest, officers secured a warrant to search Williams's vehicle. There, they found large quantities of various drugs, drug paraphernalia, and over $100,000 in cash. In the vehicle's cupholder, the officers also discovered two thumb drives. After obtaining another warrant, the university police chief searched the thumb drives' contents. One contained child pornography. Upon learning of these developments, an FBI special agent further analyzed the drives. On the first, the agent identified well over 100,000 images and videos of child pornography. The second, meanwhile, contained images of adult women being sexually assaulted. From the images, the agent identified three minors depicted in photos taken inside Williams's apartment in Tennessee. The agent also discovered photos and videos of Williams sexually assaulting three unconscious women whom the agent identified as the minor victims' mothers.

The government indicted Williams on three counts of manufacturing child pornography in violation of 18 U.S.C. § 2251(a) and (e). Just weeks into the case, Williams's counsel moved to withdraw from the representation, prompting a hearing before the district court. Along the way to that hearing, Williams escaped from the transport van. Following a multi-state manhunt, authorities found Williams in Florida, leading the government to add an escape charge to Williams's original gun case.

As for the child pornography prosecution, the government filed notices of intent to offer evidence of Williams's uncharged bad acts at trial. The district court held a hearing on the admissibility of that evidence. In sum, the district court ruled that the government, with some caveats, could introduce: (1) testimony from law enforcement regarding the presence of unrelated child pornography on Williams's flash drives; (2) photos and videos showing Williams sexually

2

assaulting the minor victims' mothers; (3) testimony from the mothers that Williams held parties at his apartment where he made available drugs and alcohol, with two mothers believing they may have been drugged; and (4) testimony from one mother witnessing Williams tracing her daughter's lips with his finger and a photo of that same victim with feces in her mouth.

The case proceeded to trial. The government presented testimony from law enforcement. One officer testified to Williams's North Carolina arrest and the discovery of the thumb drives. Another officer testified to the thumb drives' contents. A federal agent did the same and, based primarily on a tattoo on Williams's hand, further identified Williams as creating images of the minor victims and their mothers, which were also shown to the jury. Another agent testified to the images' metadata, indicating the date and time Williams made them. The mothers of the three victims also testified. Each explained the circumstances that led to their overnight stays at Williams's apartment and identified themselves and their children in the graphic photos.

Williams moved for a judgment of acquittal under Federal Rule of Criminal Procedure 29 on the basis that the government failed to prove the interstate commerce element of his offenses. The district court denied the motion. Williams then rested without presenting evidence. At the same time, he renewed his acquittal motion, which the district court again denied. After deliberation, the jury found Williams guilty on all three counts. Williams filed a post-trial motion asking again for acquittal based on the interstate commerce element or alternatively for a new trial. The district court denied that motion too.

The district court held a joint sentencing for Williams's child pornography and escape convictions. Based on Williams's overall offense level, the Sentencing Guidelines, standing alone, authorized a life sentence. The statutory maxima for Williams's offenses of conviction, however, were terms of years, not life. As a result, Williams's final calculations produced a Guidelines

range of exactly 1,080 months' imprisonment for his three child pornography convictions, equal to the statutory ceiling for each conviction imposed consecutively. The district court calculated a Guidelines range of 60 months for escape, also the statutory maximum, bringing the total Guidelines range to 1,140 months. Williams asked the district court to vary downward from that range, citing his difficult upbringing. The district court, however, was moved more by the seriousness of Williams's crimes, describing them as "especially heinous" and among "the most egregious [of] cases." R.174, PageID 4092. Williams laughed and shook his head, leading to an exchange between him and the district court. The district court also allowed Williams to make a statement in open court. Williams used that opportunity to accuse the government of photoshopping the evidence against him and to speak on various, unrelated topics. After considering the sentencing factors, the district court declined to vary downward and imposed a within-Guidelines sentence of 1,140 months' imprisonment. Williams appealed.

II.

Williams attacks his conviction and sentence in three ways. One, he requests a new trial on the basis that the district court's admission of Williams's prior bad acts unfairly prejudiced him. Two, he requests a judgment of acquittal (or at the very least a new trial) because the government failed to prove the interstate commerce element of the charged offenses. And three, he requests resentencing on the ground that the district court put an unreasonable amount of weight on Williams's character. None of these challenges passes muster.

A. Start with the evidence of Williams's prior bad acts. Our case law is split on the proper standard of review for Rule 404(b) evidence: We have sometimes applied abuse of discretion review to the entire inquiry, and we have sometimes reviewed de novo the question of whether the evidence was admissible for a proper purpose. *See United States v. Jackson*, 918 F.3d 467, 483

(6th Cir. 2012). Because we side with the government on either standard of review, we do not wade into that debate here. *See id.* In so doing, a few Federal Rules of Evidence come into view. To start, prior bad acts evidence usually must steer clear of Rule 404(b)(1)'s bar on propensity evidence. That is, a party cannot introduce evidence of a person's "crime, wrong, or act" to prove that person's "character" for purposes of showing that he acted "in accordance with that character." Fed. R. Evid. 404(b)(1). But Rule 404(b)(2) allows parties to introduce those same acts for any other relevant purpose, such as proving "motive, opportunity, intent, preparation, plan," and the like. And even where applicable, Rule 404(b)(1) has exceptions. One is relevant here: When a criminal defendant is accused of "child molestation," the government may introduce his other acts of "child molestation" for propensity purposes. *See* Fed. R. Evid. 414(a).

In addition, prior bad acts evidence remains subject to Rule 403's backstop. To that end, a district court "may exclude" otherwise "relevant evidence if its probative value is substantially outweighed" by a risk of "unfair prejudice." Fed. R. Evid. 403. Of course, the government's evidence almost always prejudices a criminal defendant to some extent. That prejudice becomes "unfair" only if it has an "undue tendency to suggest a decision based on improper considerations." *United States v. Hazelwood*, 979 F.3d 398, 412 (6th Cir. 2020) (citation modified). For example, evidence of a criminal defendant's "prior bad acts" could be so "lurid and frankly more interesting than the evidence surrounding the actual charges" that it is too "inflammatory and distracting" for the jury. *United States v. Stout*, 509 F.3d 796, 801 (6th Cir. 2007) (citation modified). But the threshold for unfair prejudice is high. As with other evidence, unfair prejudice wrought by bad acts evidence must "substantially" outweigh its probative value. *United States v. Libbey-Tipton*, 948 F.3d 694, 704 (6th Cir. 2020). And in asking whether the district court balanced those considerations correctly, we take "a maximal view of the evidence's probative effect and a minimal

5

view of its unfairly prejudicial effect." *United States v. Brown*, 367 F.3d 549, 554 (6th Cir. 2004) (citation modified). It is thus no surprise to learn that "[r]eversals on Rule 403 grounds are few and far between." *United States v. Lang*, 717 F. App'x 523, 538 (6th Cir. 2017).

Williams points to four categories of evidence he believes prejudiced him at trial. One, Williams says the district court should have barred officer testimony explaining that the thumb drives recovered in North Carolina contained images of child pornography other than those manufactured by Williams. Deeming this evidence probative of Williams's "interest in young minor children," the district court blessed its admission. R.178, PageID 4222–23.

Rule 414 allowed the government to introduce Williams's possession of child pornography to prove his inclination to manufacture child pornography. *See United States v. Hruby*, 19 F.4th 963, 966 & n.1 (6th Cir. 2021) (explaining Rule 414's definition of "child molestation"). That said, Williams believes that Rule 403 nonetheless required the evidence's exclusion. Specifically, he argues that the evidence had minimal probative value because the government did not need it to prove his offense and was otherwise cumulative. But evidence that Williams possessed child pornography had at least some value in proving that Williams's "sexual interest in children" was "strong enough to cause him to break the law." *Libbey-Tipton*, 948 F.3d at 702 (citation modified). And even were that not the case, Williams was not unfairly prejudiced. The government, it bears emphasizing, did not introduce the images themselves, but rather testimony from two officers who had reviewed the thumb drives' contents. One officer stated only that the drives primarily contained child pornography. True, the other officer explained that software had identified roughly 3,200 images of child pornography on the drives. Yet that testimony would have been unlikely to "shock[]" the jury, when the government also introduced "evidence that 'had far greater inflammatory potential,'" namely, graphic images of the minor victims themselves. *United States*

*v. Gardner*, 887 F.3d 780, 784 (6th Cir. 2018) (quoting *United States v. Mandoka*, 869 F.3d 448, 459 (6th Cir. 2017)). So all things considered, the district court did not abuse its discretion by admitting this evidence.

Two, Williams challenges the admission of photos and videos of Williams sexually assaulting the minor victims' unconscious mothers. Rule 404(b) does not apply to evidence "intrinsic to the crime charged." *United States v. Simpson*, 138 F.4th 438, 448 (6th Cir. 2025). That includes "evidence that is a prelude to the charged offense, is directly probative of [it], arises from the same events[,] . . . forms an integral part of the witness's testimony, or completes the story." *United States v. Churn*, 800 F.3d 768, 779 (6th Cir. 2015) (quoting *United States v. Grooms*, 566 F. App'x 485, 491 (6th Cir. 2014)). The government introduced partially redacted visual evidence of the assaults as proof that Williams had rendered the mothers unconscious, illustrating Williams's "plan," "preparation," and "opportunity" to molest the minor victims, as well as providing context for the offenses. Fed. R. Evid. 404(b)(2). Understood that way, we agree with the government that this evidence was "intrinsic."

Even so, Williams counters, the government did not need to introduce this proof under Rule 403 because the mothers' testimony sufficed to explain how the minor victims found themselves in Williams's apartment. But that testimony does not substitute for demonstrative evidence that Williams incapacitated the victims' mothers before engaging in his offenses. In that sense, the evidence had appreciable probative value. Nor do we find persuasive Williams's contention that this evidence did more to "poison[] the well" against him than prove his crimes. Appellant Br. 42. The government took care to partially redact the photos and videos presented for sensitivity purposes, making them no more offensive than the graphic images of the minor victims shown to the jury. *See Gardner*, 887 F.3d at 784–85. And even if "disturbing," that fact

alone does not render evidence of the assaults unfairly prejudicial. *United States v. Boyd*, 640 F.3d 657, 667–68 (6th Cir. 2011).

Three, Williams argues that the mothers' testimony about the frequent parties at Williams's apartment and the drug use at those parties went "too far." Appellant Br. 42. In his view, this testimony did not have "any relevance" and accomplished nothing "except to further inflame the passions of the jurors." *Id.* at 42–43. We disagree. Just as evidence of the assaults against the mothers showed that Williams incapacitated them in furtherance of his crimes, evidence that Williams provided the mothers with drugs explained how he may have rendered them unconscious. It also explained why the mothers associated with Williams to begin with. This evidence thus had considerable probative value; it formed an "integral part" of the mothers' testimony and "complete[d] the story" of Williams's offenses. *Churn*, 800 F.3d at 779 (citation modified). In terms of prejudice, other evidence shown to the jury "had far greater inflammatory potential," dwarfing what minimal shock value testimony about drugs might have had by that point. *Gardner*, 887 F.3d at 784 (citation modified).

Four, Williams claims the district court erroneously admitted one mother's testimony that she witnessed Williams running his fingers across her daughter's lips with his other hand seemingly down his pants. Relatedly, Williams contests the government's introduction of a photo of the same victim with feces on her lips. The photo of the victim poses no Rule 404(b) problem because it shows Williams in the midst of carrying out his crime, making it "directly probative." *Churn*, 800 F.3d at 779 (citation modified). And the mother's testimony, like the mothers' testimony that Williams assaulted them, "complete[d] the story" of his offenses. *Churn*, 800 F.3d at 779.

Nor does the evidence's admission run afoul of Rule 403. To begin, the evidence has discernible probative value. At trial, an agent who reviewed Williams's thumb drives testified to finding "images and videos of individuals defecating, as well as feces used in a sexually explicit manner." R.180, PageID 4498. This testimony, combined with the victim's mother's observations, would have allowed the jury to infer that Williams created the photo involving the feces and that he did so for his sexual gratification. That, in turn, tends to prove that Williams, and not someone else, took this and other photos of the victim for the "purpose of producing" child pornography. 18 U.S.C. § 2251(a). Williams counters that this evidence was "not necessary" to prove the point. Appellant Br. 43. But even if not strictly necessary for a conviction, "the government's need for the evidence" is but one consideration under Rule 403. *Stout*, 509 F.3d at 800. Nor do we think Rule 403 consigns the government only to the bare minimum evidence needed to prove its case. In any event, the evidence at issue did not result in disproportionately more unfair prejudice. The district court took care to limit the mother's testimony only to what she witnessed, rather than let her opine that she saw Williams masturbating. And as for the photo of feces on the victim's lips, the government showed the jury similarly disturbing photos of the victim. It is thus not obvious how this evidence heaped additional condemnation on Williams over and above everything else the jury saw. *See Gardner*, 887 F.3d at 784. As a result, we cannot say that the district court abused its discretion.

In sum, the district court did not err in admitting the government's bad acts evidence at trial.

B. Turn next to Williams's sufficiency of the evidence challenge. He argues that the government failed to prove the interstate commerce element of 18 U.S.C. § 2251(a), thus entitling him to acquittal under Federal Rule of Criminal Procedure 29. Williams's task here is a tall one.

9

As the jury found in the government's favor, Williams must convince us that "the government's case was so lacking that it should not have even been submitted to the jury." *United States v. Wilder*, 87 F.4th 816, 820 (6th Cir. 2023) (citation modified). That is, the jury's guilty verdict will stand as long as "*any* rational trier of fact, when viewing the evidence in the light most favorable to the prosecution, could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (citation modified).

To convict Williams, the government had to prove that he manufactured child pornography with the requisite nexus to interstate or foreign commerce. *See* 18 U.S.C. § 2251(a). Under the statute, the government may satisfy that nexus by showing one of three things: that the defendant knew or had reason to know the "visual depiction will be transported" in interstate commerce; that the "visual depiction was produced or transmitted using materials" that have been transported in interstate commerce; or that the "visual depiction has actually been transported or transmitted" in interstate commerce. *Id.* The government need prove only one of these three "jurisdictional hooks." *United States v. Lively*, 852 F.3d 549, 559 (6th Cir. 2017).

At trial, the government pursued the third route. It introduced testimony from the victims' mothers identifying their respective child in the images and stating that they would have been in Williams's Tennessee apartment at the time the images were made. Two mothers even identified Williams's apartment from the background of the photos taken by Williams. After that, the government presented testimony from an officer who had reviewed the minor victims' images found on the thumb drives. The officer explained that metadata from the images reflected dates and times aligning with the mothers' testimony. Having established that Williams produced the images in Tennessee, the government introduced evidence that officers found the thumb drives containing the images in North Carolina. That the victims' images were produced in one state yet

10

found in another "allow[ed] the jury to draw the reasonable inference that this child pornography must have travelled across state lines." *United States v. Pina*, 724 F. App'x 413, 424 (6th Cir. 2018); *see United States v. Diehl*, 775 F.3d 714, 722 (5th Cir. 2015) ("[Defendant] physically transported the videos in interstate commerce . . . when he moved his computer across state lines . . . ."). This evidence alone would thus suffice for a reasonable jury to conclude that the images themselves had "actually been transported" in interstate commerce. 18 U.S.C. § 2251(a).

Williams's attempts to cast doubt on this evidence are unconvincing. He argues that, because the government never recovered the devices Williams used to capture the victims' images, "there is no way to know" whether the dates and times shown in the metadata are "accurate." Appellant Br. 32–33. But the mere possibility that "[t]he metadata may not be accurate" cannot sustain his sufficiency of the evidence challenge. *Id.* At this stage, after all, the government's evidence "need not remove every reasonable hypothesis except that of guilt." *United States v. Sadler*, 24 F.4th 515, 539 (6th Cir. 2022) (citation modified). Metadata aside, Williams wholly ignores the testimony by the mothers, which independently established that Williams produced the images in Tennessee. Falling back, Williams argues that the evidence still does not rule out the possibility that Williams transferred the Tennessee-made images onto the thumb drive after arriving in North Carolina rather than downloading them before he entered the Tar Heel State. Yet this distinction lacks a difference. Either way, the fact remains that the images were produced in Tennessee and found in North Carolina. A reasonable jury could thus conclude that Williams "physically transported" the images in interstate commerce in that some device containing the images ultimately crossed state lines. *Diehl*, 775 F.3d at 722; *see Pina*, 724 F. App'x at 424. All told, Williams's sufficiency challenge fails.

Williams alternatively argues that the district court at the very least erred by denying him a new trial under Federal Rule of Criminal Procedure 33. We review that denial for abuse of discretion. *United States v. Matthews*, 31 F.4th 436, 449 (6th Cir. 2022). Unlike Williams's Rule 29 motion, his new trial motion allowed the district court to "weigh[] evidence," "mak[e] credibility determinations," and determine whether his convictions were "against the manifest weight of the evidence." *Id.* at 448 (quoting *United States v. Mallory*, 902 F.3d 584, 596 (6th Cir. 2018)). Despite that added wiggle room, Williams's new trial request merely incorporates his sufficiency-based arguments by reference, and we find those arguments equally unavailing here.

C. Finally, turn to Williams's sentence. Due to Williams's offense level, his raw Guidelines range exceeded the statutory maxima for his offenses of conviction. As a result, the district court calculated an aggregate Guidelines range of precisely 1,140 months' imprisonment—equal to the statutory ceiling for each count, including the escape charge, imposed consecutively. Adhering to that month-based range, the district court imposed a sentence of 1,080 months for Williams's three child pornography offenses and a further 60 months for escape. Williams argues that his 1,080-month sentence is both procedurally and substantively unreasonable because the district court placed too much weight on the severity of Williams's crimes and not enough on his troubled upbringing.

Despite the labels in his brief, Williams does not actually contest the procedural reasonableness of his sentence. Procedural reasonableness goes to whether the district court failed to "properly calculate the guidelines range, treat that range as advisory, consider the sentencing factors in 18 U.S.C. § 3553(a), refrain from considering impermissible factors, select the sentence based on facts that are not clearly erroneous, [or] adequately explain why it chose the sentence." *United States v. Rayyan*, 885 F.3d 436, 440 (6th Cir. 2018) (citing *Gall v. United States*, 552 U.S.

12

38, 51 (2007)). Substantive reasonableness, meanwhile, goes to whether the district court "placed too much weight on some of the § 3553(a) factors and too little on others." *Id.* at 442. At bottom, Williams only claims that his sentence is too long because the district court "put an unreasonable amount of weight" on certain considerations. Appellant Br. 46. So his objection is substantive in nature, not procedural.

Did the district court abuse its discretion in selecting the length of Williams's sentence? *Gall*, 552 U.S. at 51. To demonstrate as much, Williams carries a heavy burden. We "grant considerable deference" to the district court's weighing of the § 3553(a) factors, *United States v. Faulkner*, 926 F.3d 266, 273 (6th Cir. 2019), and we will not overturn Williams's sentence just because we might have selected a different one, *Gall*, 552 U.S. at 51. What is more, because the district court's sentence fell within the Guidelines range, Williams must overcome the presumption that the sentence was reasonable. *See United States v. Gardner*, 32 F.4th 504, 530 (6th Cir. 2022) (citing *United States v. Williams*, 436 F.3d 706, 708 (6th Cir. 2006)).

He cannot do so. In crafting Williams's sentence, the district court gave due consideration to the § 3553(a) factors. The district court reflected on the "despicable" nature of Williams's crimes, classifying them "among the most serious offenses that can be committed." R.174, PageID 4093, 4095. It observed how Williams repeatedly refused to accept responsibility and exhibited no remorse throughout the sentencing hearing, underscoring his lack of "respect for the law." *Id.*, PageID 4095–97. The district court also properly accounted for "deterrence," "the need to protect the public," and Williams's "personal history and characteristics," including his "unfortunate" upbringing. *Id.*, PageID 4098–4101, 4106. Ultimately, the district court concluded that "every one of the statutory factors" supported Williams's within-Guidelines sentence. *Id.*, PageID 4108.

Notwithstanding the district court's comprehensive analysis, Williams says the district court should have focused more on his "lack of guidance as a youth," "early exposure to drugs and alcohol," and "abuse he suffered as a child." Appellant Br. 45. But Williams's "assertion that the district court should have balanced the § 3553(a) factors differently . . . is simply beyond the scope of this court's appellate review." *United States v. Frei*, 995 F.3d 561, 567–68 (6th Cir. 2021) (citation modified). Given Williams's wicked acts, moreover, the district court did not abuse its discretion in giving that reality greater weight. *See United States v. Fleischer*, 971 F.3d 559, 574 (6th Cir. 2020). Nor was it unreasonable for the district court to conclude that Williams's difficult childhood did not meaningfully excuse his adulthood crimes, rejecting that assertion as a basis for varying downward from the Guidelines range. *See United States v. Ragsdale*, No. 24-5999, 2025 WL 3025480, at *3 (6th Cir. Oct. 29, 2025). All told, the district court did not abuse its discretion by imposing a within-Guidelines sentence.

*    *    *    *    *

We affirm.